*DANIEL HARKLEROAD ET AL. *v.* THOMAS R. MAXWELL ET AL.

CHANCERY CLERKS. *Guardians ex officio. Commissions. Code* 1892, § 2189.

Under code 1892, § 2189, providing commissions to chancery clerks, as *ex officio* guardians of the estates of infants, where two or more clerks act successively for the same ward, no one of them, not having finally settled the estate, is entitled as compensation to five per centum commissions on the value of the corpus of the ward's real estate, in addition to commissions on his personal estate.

FROM the chancery court of DeSoto county.

HON. JAMES C. LONGSTREET, Chancellor.

Harkleroad, the ward, and Bass, his guardian, the appellants, were the complainants in the court below; Maxwell, ex chancery clerk and the sureties on his official bond, appellees, were defendants there.

Under the will of his father, Harkleroad, the ward, was not entitled to the custody and control of a part of the estate bequeathed to him until he should become twenty-five years of age. When he became twenty-one years of age, Bass, his guardian, settled finally with him, so far as could be done under the will, and he thus came into control of a part of the property; but that which by the will was withheld from him until he should become twenty-five was left under the control of Bass, guardian, and thus both Harkleroad and Bass, guardian, were made complainants. The suit was upon the official bond of Maxwell, chancery clerk, who had *ex officio* been the guardian of Harkleroad's estate, and so had a preceding and a succeeding chancery clerk, to recover excessive commissions retained by Maxwell as compensation for his services, the chancery court having allowed the commissions to Maxwell in his final settlement; and the suit was in the nature of a bill of review, author-

---
* The opinion in this case is modified by that rendered in *Maxwell* v. *Harkleroad.* (*Post, p.* 456.)

77 Miss.—8c

ized by code 1892, § 1960, as amended by laws 1894, p. 45, which is in these words:

"*Accounts opened and falsified in two years.*—Any person interested may, at any time within two years after final settlement, by bill or petition, open the account of any executor, administrator or guardian, and surcharge and falsify the same, and not after, saving to minors and persons of unsound mind, the same time after the removal of their disability; and such bills or petitions may be filed without leave of the court or chancellor, and evidence shall be admissible in such cases to show the falsity of the account; and such bills and petitions shall not be governed by the rules applicable to bills of review in chancery, but in such cases it will be the duty of the court to correct any errors of law or fact occurring in the final settlement of the executor, administrator or guardian."

The contention of the defendants is stated in the opinion. The court below sustained a demurrer to the bill and the complainants therein appealed to the supreme court.

*Farley & Lauderdale,* and *Cooper & Waddell,* for appellants.

The demurrer of the defendant in this case raises the proposition of law that a chancery clerk who has, by virtue of his office as clerk, had charge of the estate of a minor as guardian, and who did not finally settle up the guardianship of such estate, is entitled to a commission of 5 per centum on the entire real and personal estate of said minor.

To this proposition we reply that the law never contemplated that a guardian should be allowed to charge the minor a commission on the real estate.

If the contention of the defendants in this case be correct, that Maxwell, as guardian, was entitled to a commission of 5 per centum on the value of the minor's estate, including his real estate, then Maxwell should have given a special bond in this case, because the defendants show that the value of the minor's real estate alone was some seventy thousand dollars, when

the law does not fix the penalty of the bonds of the clerks of the chancery court in a greater sum than twenty thousand dollars.

The object of the law is very clear, and we illustrate it from the facts in this case. West, who preceded Maxwell as clerk of the chancery court of DeSoto county, had charge of this minor's estate as guardian when he went out of office. If the contention of the appellees in this case be correct, West could have charged and received a commission of 5 per centum on the real estate, then when Maxwell was appointed and took charge of said estate, he would be allowed 5 per centum on the value of the real estate; and then Bass, who succeeded Maxwell as guardian, would be allowed 5 per centum of the value of his real estate, in addition to allowing a commission of 5 per centum on all rents and profits and other income that the several guardians may have collected therefrom and disbursed; this would be 15 per centum, and exceed the amount of commissions allowed under the general law regulating the compensation of guardians—that their said compensation is not to exceed 10 per centum; and for this reason the legislature provided, in § 2189 of the code already quoted, that the clerk, as guardian, should not receive a commission exceeding 5 per centum on the amount of the minor's estate, meaning thereby that where the clerk has charge of a minor's estate for only a portion of his ward's minority that he shall only be paid 5 per centum on the amount of the personal estate received and disbursed by him.

*Perkins & Winston,* for appellees.

Whether used in its ordinary or technical sense, the word estate embraces real estate. In fact, in its ordinary sense, it refers often only to real estate, and in its technical sense it refers entirely to real estate. Used by itself, it does not seem ever to be used to mean only personal property. Anderson's Law Dicionary, title, Estate; Bouvier's Law Dictionary, title, Estate.

In construing § 1740, code of 1892 (§ 1602, code of 1880),

in reference to testimony to establish "a claim or defense against the estate of a deceased person," this court has held that "estate" is used in its broad and popular sense to signify all the property of every kind which one leaves at his death. *Jacks* v. *Bridewell,* 51 Miss., 881; *Green* v. *Mizelle,* 54 Miss., 216; *Rotschild* v. *Hatch,* 54 Miss., 550; *Jackson* v. *Smith,* 68 Miss., 53; *Neblett* v. *Neblett,* 70 Miss., 572.

In the Century Dictionary "estate" is defined to mean "property in land or other things," "property in general," "possessions," "especially the property left at a man's death," "more technically with relation only to land; the degree or quantity of interest which a person has in land." Century Dictionary, title, Estate, 5 and 6; Webster's Int. Dic., title, Estate.

It appears from these definitions that the word estate not only embraces, but applies particularly to real estate or lands.

The use of the word estate in another part of § 2189, and in other places, especially with reference to the same subject, shows that it was intended to embrace real estate.

Commissions are allowed to guardians for their "trouble." The duty of the guardian relates as much to the real as to the personal estate of his ward. He has to give his care, time, and attention to both. He is under liability for want of care with reference to either. His trouble relates to both, and in some cases largely, if not entirely, to the real estate. The conclusion is irresistible that the legislature intended that the guardian's compensation should be based upon the "estate" about which he has "trouble" in the care and management thereof. He is allowed commissions for his trouble and his trouble relates to both the real and personal estate.

A ward's estate might consist entirely of timber lands. The ward might have a father whose duty it was to educate and maintain him. It would be the duty of the guardian to protect the lands and the timber, if valuable, and to defend the title if attacked. It might require no little trouble to keep the timber from being depredated upon. Or it might be his duty

to let the land out on long leases without rent to get it in culti-
vation, so that it would bring a revenue in the future, and to
see that these leases were properly carried out. In case the land
should remain wild, or in case the guardianship ceased before
the land brought in a revenue, he would be entitled to no al-
lowance for his "trouble," if he is to be allowed for trouble
only about personal estate, or if his allowance can be based
only on the amount of value of the personal estate. The legis-
lature could not have intended such an unjust consequence.

There is also a clear intent that the guardian shall be paid
for his trouble. Sec. 2189, code 1892, provides for this pay-
ment to a clerk or guardian by an allowance of "not more
than ten per centum on the amount of the estate, if finally set-
tled by him, and of not more than five per centum if not so
settled."

As the duties and trouble of the guardian relate as well to
real estate as personal, and, in point of fact, may relate only to
real estate, if the ward has no personal estate, it would be in
harmony with the general intent to construe the word estate
to mean both real and personal estate. Such should be the
construction of a statute. "The interpretation of statutes
should lean strongly against absurd consequences, injustice, and
even great inconvenience, for the legislative meaning is to be
carried out, and it cannot be supposed to be any of these."
Bishop on Written Law, sec. 82.

The construction contended for by appellants would lead
often to injustice (where the personal estate of a ward is very
small compared to his real estate), or to both injustice and ab-
surdity, where the ward had a large real estate yielding no in-
come, and no personal estate.

WHITFIELD, J., delivered the opinion of the court.

Several considerations show that the contention of appellee
cannot be sound. That contention is that each chancery clerk,
no matter how many, who may act as guardian of a minor,

under the provisions of § 2189 of the code of 1892, is entitled to 5 per centum on the value not only of all the personal estate, and of the income from the real estate, but of the value of the corpus of all his real estate also. Of course, so far as the mode adopted by the chancellor of arriving at the compensation is concerned, it amounts to nothing, so long, as to amount, he keeps within the legal limit. But· the argument stresses too exclusively a single word, "estate." It is not so much the meaning of this word, isolatedly looked at, as its meaning in the phrase, "amount of the estate . . . settled by him." Looking to the whole context all related statutes, especially § 2225, and the subject-matter dealt with, we think it is clear that a guardian is not ordinarily entitled to any commissions upon the value of the corpus of his ward's real estate, and that the word "estate," in the phrase "amount of the estate settled by him," means personal estate proper, and the income of the realty. The court looks to the real estate to ascertain its income, and allows commissions on that. But it was assuredly never intended to allow commissions on the value of the corpus of the real estate. He is to be compensated for his "trouble." Ordinarily he has no "trouble" with regard to real estate beyond paying taxes, etc., and collecting rents, and for this commissions on the amount of the income of the real estate are compensation deemed adequate. He is paid for his "trouble" in respect to the "estate settled by him"—the estate he deals with, and that does not ordinarily include the corpus of the real estate. We are not dealing with the case of a guardian who sells his ward's lands under the order of the court, nor with any conceivable case where he might deal with the corpus otherwise than in the usual way. This guardian paid taxes, redeemed lands from tax sales, rented them, etc.

Section 2189 provides that he shall "not be allowed more than ten per centum on the amount of the estate, if finally settled by him, or not more than five per centum if not so settled."

Here there was a guardian before this one—the former chancery clerk; and one after him—the appellant, Bass.

If appellee's contention be sound, each guardian could have been allowed not only five per centum on the amount of the personal estate, and of the income of the real estate, but five per centum also on the value of the corpus of the real estate; or, in other words, fifteen per centum on the amount of the estate, real and personal, would thus be allowed, though the statute positively limits the compensation to ten per centum of the "amount of the estate settled."

Again, if appellee's contention were sound, the clerk should give a bond when "the estate of the ward exceeds in value the penalty of his official bond," additional to his official bond. Nothing of the sort was done here, though the lands are estimated by the guardian himself at seventy thousand dollars.

Again, the guardian asked the chancellor to allow him commissions on the value of the corpus of the estate, which he refused to do, but expressly fixed the compensation at ten per centum—not five per centum; and limited it to the personal estate proper and income of the real estate.

These three considerations show that the chancellor thought, correctly, commissions should not be allowed on the corpus of the real estate. Cases may readily be imagined where lands might be worth large sums, and yet rent for very small ones. Take an almost wholly uncleared farm in the Delta worth $20,000; but, renting on some small cleared acreage for $1,000. According to appellees' theory each chancery clerk or guardian would be entitled to five per centum on the value of the corpus —$20,000—being $1,000, thus absorbing the whole rent, and also to five per centum on this sum of $1,000 rent. Such folly cannot be imputed to the legislature. Statutes must receive a reasonable application, looking to their purpose, the whole context, and the subject-matter dealt with, not narrowly to isolated words.

In § 2225 the phrase "value of the estate" occurs, and yet

it is plain that the basis fixed by that statute for the computation of commissions is the "value of the estate" passing through his hands, "settled by him," as shown by the disbursements and receipts of the various annual accounts and the final account. The record leaves the matter of the rent and notes, as to whether they are for 1895 or 1896, in some confusion. But it was manifest error to allow the appellee ten per centum as shown by the record, he not having finally settled the estate.

*Reversed, demurrer overruled, and remanded with leave to answer in thirty days after mandate filed in the court below.*